**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ARTEMIO REYES,**<br><br>Plaintiff,<br><br>v.<br><br>**ALJ DRYWALL AND PAINTING LLC, *et al.*,**<br><br>Defendants. | Civil Action No. 25-03514 (ZNQ) (JTQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Default Judgment filed by Plaintiff Artemio Reyes ("Plaintiff") (the "Motion," ECF No. 12.) Plaintiff filed a moving brief in support of the Motion ("Moving Br.," ECF No. 12-1.) Defendants ALJ Drywall and Painting LLC ("ALJ") and Adrian Sierra Medina ("Medina" and together with ALJ, "Defendants") have not appeared in this matter.

The Court has carefully considered Plaintiff's submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT IN PART and DENY IN PART** the Motion.

## I. BACKGROUND

According to his complaint, from May 10, 2021 to October 16, 2023, Reyes was employed as a carpenter by Defendants — ALJ and its President, Medina. (Compl. ¶¶ 3, 5, 46–47.) Reyes claims that his regular on-site work hours were 7:00 a.m. to 3:30 p.m. (*Id.* ¶ 55.) However, from

May 10, 2021 through approximately December 2021, Reyes worked beyond these hours once per week, beginning work as early as 6:00 a.m. and finishing as late as 10:30 p.m. (*Id.* ¶ 56.) Reyes alleges that half of the weeks he worked six days per week, and the other half of the weeks he worked seven days per week. (*Id.* ¶ 57.) As a result, Reyes alleges that between March 2021 and the end of December 2021 he worked 55 hours per week (for the weeks he worked six days) and 63.5 hours per week (for the weeks he worked seven days). (*Id.* ¶ 58.) Beginning in January 2022 through the end of August 2023, Reyes alleges that, as part of his employment responsibilities, he was required to transport other ALJ employees to and from their assigned worksite two days per week, which added approximately three to four hours to those workdays. (*Id.* ¶ 59-61.) During that time Reyes alleges that he worked between 62 hours per week (for weeks he worked 6 days) and 70.5 hours per week (for weeks he worked 7 days). (*Id.* ¶ 62.) Beginning in September 2023 through the remainder of Reyes' employment, he was required to pick up and drop off employees every day that he worked, raising his weekly hours to 76 (for weeks he worked 6 days) and 88 (for weeks he worked seven days). (*Id.* ¶ 63-64.)

Reyes alleges that from May 10, 2021 through February 2023, Defendants paid him a flat daily wage of $180. (*Id.* ¶ 65.) From March 2023 though June 2023, Reyes was paid a flat daily wage of $190. (*Id.* ¶ 66.) From July 2023 through October 16, 2023, Reyes was paid a flat daily wage of $200. (*Id.* ¶ 67.) These rates were set regardless of how many hours Reyes worked in a given day or week. Reyes was paid weekly in cash from May 10, 2021 through December 2022, (*id.* ¶ 68), and thereafter he was paid via weekly checks through the end of his employment, (*id.* ¶ 69.) Defendants and Reyes never had an express agreement as to how many daily or weekly hours his daily wage was intended to compensate. (*Id.* ¶ 70.) Reyes incurred approximately $70 in gas

and toll expenses on each day he was required to provide pick-up and drop-off services, but Medina only reimbursed him $200 for gas and $400 for tolls in total. (*Id.* ¶ 71-73.)

Reyes alleges that Defendants failed to pay him the proper regular wage and the proper overtime wage, Defendants failed to keep accurate records of wages earned or hours worked by Reyes, Defendants failed to furnish Reyes with a wage notice setting forth the terms of his employment or his wage payment statements, and Defendants failed to reimburse Reyes for gas and toll costs incurred in connection with his employment, in violation of the FLSA, NYLL, and NJWHL.

Reyes filed his complaint on April 29, 2025, which was served on Medina on May 27, 2025 and ALJ on June 3, 2025. Defendants failed to appear in the action, and the Clerk entered default at Reyes' request on September 8, 2025. Thereafter, Reyes filed the instant motion for default judgment, seeking judgment for unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action.

## II. <u>SUBJECT MATTER JURISDICTION</u>

This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey and New York state law claims pursuant to 28 U.S.C. § 1367(a).

## III. <u>LEGAL STANDARD</u>

Rule 55 governs default and default judgment. *See* Fed. R. Civ. P. 55. Pursuant to Rule 55, the clerk must enter default against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After an entry of default, a plaintiff may seek default judgment under either Rule 55(b)(1) or Rule 55(b)(2). *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Nationwide*

*Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a).").

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). However, "entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) (citing *Super 8 Motels, Inc. v. Kumar*, Civ. No. 06-5231, 2008 WL 878426, at *3 (D.N.J. Apr. 1, 2008)). In other words, the district court must remain mindful that default "is a sanction of last resort." *Id.*

Before entering default judgment, the court must make a "threshold determination" of whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015); *see IFMK Realty II, LLC v. Atl. Prop. Dev., LLC*, Civ. No. 20-6989, 2023 WL 7166940, at *2 (D.N.J. Oct. 31, 2023).

After that, "[i]n assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis, under which the Court must determine (1) whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]" *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 599–600 (D.N.J. 2016) (quotation marks omitted).

Before determining whether imposing the extreme sanction of default judgment is proper, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default. *Sabinsa Corp. v. Prakruti Prods. Pvt. Ltd.*, Civ.

No. 14-4738, 2023 WL 7298471, at *6 (D.N.J. Nov. 6, 2023) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71 (3d Cir. 1987)). An entry of default judgment is not a right that plaintiffs are entitled to and a "defendant's failure to appear or answer does not vitiate the Court's responsibility to examine the complaint." *Paniagua Grp.*, 183 F. Supp. 3d at 600 (internal quotation marks omitted).

## IV. DISCUSSION

### A. ENTRY OF DEFAULT

The first step in obtaining a default judgment is the entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Clerk entered default against Defendants on September 8, 2025.

### B. JURISDICTION AND SERVICE

The Court begins its inquiry by determining whether jurisdiction is proper and whether Defendants were properly served.

#### 1. Personal Jurisdiction

The Court has general personal jurisdiction over ALJ because ALJ is a New Jersey entity that maintains a principal place of business in New Jersey and provided construction services in New Jersey. (Compl. ¶¶ 26–34.) The Court has specific jurisdiction over Medina, a principal, shareholder, officer, owner and/or manager of ALJ who oversaw and controlled Plaintiff's employment, because the complaint alleges that Medina, on behalf of ALJ, directed substantial conduct in New Jersey concerning Reyes' employment responsibilities. (*Id.* ¶¶ 37–43.)

3. <u>Service</u>

Finally, the docket reflects that Medina was served with the Summons & Complaint in his individual capacity on May 27, 2025 by way of service upon a person of suitable age and discretion, at Medina's "dwelling house (usual place of abode) [in Honesdale, Pennsylvania]." (ECF No. 5); *see also* Fed. R. Civ. P. 4(e)(2)(B). It appears that Reyes attempted substituted service on ALJ on June 3, 2025 by serving the Summons & Complaint to an authorized representative of the New Jersey Secretary of State, New Jersey Department of Treasury located at 33 West Trenton Street, 5th Floor, Trenton, New Jersey 08608. (ECF No. 4.) For the reasons set forth below, however, the Court finds that the proof as to service on ALJ is inadequate.

Fed. R. Civ. P. 4(e)(1)(A) provides that service may be effectuated "in the manner prescribed by Rule 4(e)(1) for serving an individual" which permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Pursuant to N.J.S.A. 2A:15-30.1(b) (Service of process on business entity; substituted service):

> If a business entity, foreign or domestic, is required to register with a State official or agency to transact business in this State and is required to register an address or an agent in this State for the service of process, process in any action in any court of this State directed to the business may be served on the State official or agency, if:
>
> > (1) The business entity has failed to register or re-register as required by law; or
> >
> > (2) The business entity has failed to maintain a registered address or a registered agent in this State for service of process, as required by law.

N.J.S.A. 2A:15-30.1(b); *see Cristian Rivers v. Ceviche Time, LLC*, 2025 WL 5301144, at *2 (D.N.J. Aug. 27, 2025) (applying N.J.S.A. 2A:15-30.1(b) in analyzing adequacy of service of process upon a New Jersey LLC). In other words, if a business entity is lawfully registered in New

Jersey and maintains a registered address or agent in New Jersey, substituted service is not proper. The Court is not convinced that ALJ was properly served in this action.

According to the Complaint, "ALJ's registered office, main business address, principal business address, and service of process address were and are located at 1881 Rt. 37 West, Toms River, New Jersey 08757." (Compl. ¶ 28.) Neither the Complaint nor the affidavit of service (ECF No. 4) provide any indication that ALJ failed to register or re-register its business as required under New Jersey law; that ALJ failed to maintain a registered address or a registered agent in New Jersey as required by law; or that Reyes attempted service at ALJ's registered Toms River office or upon a managing agent. The Declaration of Justin Ames (ECF No. 6-1) submitted in support of Reyes' Request for Certificate of Default (ECF No. 6) fairs no better, summarily failing to provide details as to the circumstances under which ALJ was served. Absent any allegations or attestations that ALJ failed to (1) register or re-register as required by law, or (2) maintain a registered address or a registered agent in New Jersey,[1] the Court cannot find that Reyes adequately served ALJ pursuant to Section 2A:15-30.1.[2]

---

[1] To the extent Reyes attempted substituted service due to failure to personally serve Medina in his capacity as representative of ALJ, even though Reyes does not raise that reason, the Court declines to find such exhaustion of service sufficient because the Complaint nonetheless alleges that ALJ maintains a registered principal place of business in Toms River, New Jersey, and Reyes does not provide any indication that service was attempted at that address.

[2] Even if Plaintiff satisfied either of these conditions of service under Section 2A:15-30.1, it is unclear whether Plaintiff served the appropriate entity. The relevant affidavit of service identifies both the New Jersey Secretary of State and the New Jersey Treasury, and lists the service address as 33 West Trenton Street, Trenton, New Jersey. (ECF No. 4.) While this address appears to be the Treasury's, Reyes has made multiple representations that ALJ was served via the "Secretary of State." "But 'the State Treasurer is authorized to receive service of process on behalf of entities that have failed to maintain a registered agent or failed to register with the State Treasurer.'" *Zurich Am. Ins. Co. v. Big Green Grp., LLC*, Civ. No. 19-11500, 2021 WL 4739830, at *2 (D.N.J. Oct. 8, 2021) (first quoting *Argonaut-Midwest Ins. Co. v. Colt Logistics Inc.*, Civ. No. 18-11783, 2018 WL 6716104, at *1 n.2 (D.N.J. Dec. 20, 2018); and then citing *B&B Realty Assocs., LLC v. J & S Mgmt. Enters., Inc.*, Civ. No. A-1002-06T11002-06T1, 2008 WL 4681981, at *5 (N.J. App. Div. Oct. 22, 2008)); *see Kearny Fed. Sav. Bank v. 100 W. St., LLC*, Civ. No. A-2164-22, 2024 WL 2966560, at *3 (N.J. Super. Ct. App. Div. June 13, 2024) ("Effective January 6, 2000, the Treasury replaced the Secretary of State as the state official or agency handling corporate filings and registrations.").

Accordingly, while the Court proceeds with its assessment of whether default judgment is warranted as to Reyes' claims against Medina personally, the Court will deny Reyes' motion for default judgment against ALJ without prejudice.

**C. LIABILITY**

The second step of the Court's inquiry is whether the Complaint states a valid cause of action. Reyes alleges that Medina violated the FLSA, NJWHL, and NYLL as Reyes' employer by failing to pay certain wages and reimbursements. Reyes has stated viable claims under each statute.

Specifically, Reyes alleges that Medina may be held liable under the FSLA, NJWHL, and NYLL for regular and overtime wages owed to him from May 10, 2021 through approximately October 16, 2023, as well as "spread-of-hours" payments under the NYLL for days he worked in excess of 10 hours.

1. Unpaid Wage and Overtime Compensation

To state a prima facie claim under the FLSA for wage violations, a plaintiff must allege that (1) he was an employee of the defendant; (2) the defendant was "engaged in commerce"; and (3) the defendant failed to pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week. *See Perez v. Express Scripts, Inc.*, Civ. No. 19-7752, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020) (citations omitted); 29 U.S.C. §§ 206, 207, 216(b). Once a plaintiff establishes an employer-employee relationship, the burden shifts to the defendant to prove its "entitlement to any exemptions or exceptions." *Clews v. County of Schuylkill*, 12 F.4th 353, 359 (3d Cir. 2021). The NJWHL and NYLL are interpreted similarly to the FLSA and provide parallel State causes of action for nonpayment of wage and overtime compensation. *Morales v. Aqua Pazza LLC*, Civ. No. 20-6690, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (citing *Perez*,

2020 WL 7654305, at *2; N.J.S.A. §§ 34:11-56a4(a)-(b), 34:11-56a25); *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ("New York's Labor Law is the state analogue to the federal FLSA. Although the Labor Law does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales, it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime, including the minimum wage during the relevant period. The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages.") (citations and quotations omitted); *Debejian v. Atl. Testing Labs., Ltd.*, 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

The FLSA and NJWHL define "employer" to include "any person . . . acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d); *see* N.J.S.A. § 34:11-56a1(g). An individual supervisor may qualify as an "employer" if he "exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) (quotations omitted).

Reyes alleges that for the duration of his employment at ALJ, he "was subordinate to and under the direct supervision of Medina." (Compl. ¶ 24.) The allegations in the Complaint suggest that Reyes was not in a position of supervisory authority or that he otherwise worked in a supervisory capacity.[3] (*See id.* ¶¶ 48–53.) Reyes has alleged that (i) in carrying out his employment responsibilities for Medina, he transported materials as well as fellow employees via interstate commerce to complete construction projects in New York and New Jersey, (*id.* ¶ 23),

[3] The FLSA and NJWHL exempt the payment of overtime to employees in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see* N.J.S.A. § 34:11-56a4(b).

and (ii) ALJ engaged in interstate commerce, (*id.* ¶ 30.) Moreover, Reyes alleges that Medina failed to make overtime and wage payments required by federal and state law. (*Id.* ¶¶ 87, 93, 103, 110.) Reyes also alleges that Medina failed to reimburse him for tolls and gas expended in furtherance of his employment responsibilities. (*Id.* ¶ 11.) Reyes has therefore stated a *prima facie* case under the FLSA, NJWHL, and NYLL. Moreover, as the party in default, Medina has not carried his burden to show that an exemption applies.

2. Spread of Hours and Record-Keeping Violations

Reyes also brings "spread of hours" and improper record-keeping claims against Medina under the NYLL. As the district court in *Santillan* explained:

> New York law [ ] contains a "spread of hours" provision which allows a plaintiff to recover an extra hour's worth of pay at the minimum wage for each day that an employee works in excess of ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4. Section 663 of the Labor Law also expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute. N.Y. Lab. Law § 663(1). Like its federal counterpart, the Labor Law requires that employers maintain records for their employees who fall under the Labor Law's wage protections. *See* N.Y. Lab. Law §§ 195, 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 138–3.1 (specifying content of employer's records).

822 F. Supp. 2d at 293. Moreover, the NYLL "requires that employers maintain records for their employees who fall under the Labor Law's wage protections." *Id.* (citing N.Y. Lab. Law §§ 195, 661).

Specifically, Reyes alleges that Medina violated NYLL § 195(1)(a), which obligates every employer to:

> provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the

> minimum wage, including tip, meal, or lodging allowances; [ ] the regular pay day designated by the employer in accordance with § 191 (Frequency of payments); the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1)(a)(iv) further mandates that:

> Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years.

Reyes alleges that for the duration of his employment with Defendants, Defendants failed to: (i) "pay Reyes any additional pay when his shift or shifts exceeded 10 hours per day," (Compl. ¶ 77); (ii) keep accurate record of wages earned or hours worked by Reyes, (*id.* ¶ 78), (iii) furnish Reyes with a wage notice setting forth essential information related to his employment status, (*id.* ¶ 79); and (iv) furnish Reyes with an accurate and complete statement describing Reyes' wages, hours, and responsibilities, (*id.* ¶ 80.) These failures constitute actionable violations of the NYLL.

Reyes has therefore stated valid claims for spread of hours compensation and record-keeping violations under the NYLL.

3. Applicable Statute of Limitations

Lastly, the Court assesses Reyes' timeliness under the applicable statute of limitations. Pursuant to the FLSA, a cause of action must be "commenced within two years" unless it arises from a "willful violation," in which case it "may be commenced within three years." 29 U.S.C. § 255(a). "[A] separate cause of action . . . accrues at each regular payday immediately following the work period during which the services were rendered." *D'Agostino v. Domino's Pizza*, Civ. No. 17-11603, 2018 WL 1914239, at *6 (D.N.J. Apr. 23, 2018).

Reyes filed this action on April 29, 2025 and seeks compensation for services rendered from May 10, 2021 through approximately October 16, 2023. The Complaint alleges that Medina intentionally and willfully failed to pay regular and overtime wages owed to Reyes as required by he FLSA and NJWHL. (Compl. ¶¶ 89–90, 94–95, 104–06, 111–12.) Accordingly, this action was timely commenced.

The Court finds that Counts I through VIII therefore state viable claims for relief under the FLSA, NJWHL, and NYLL.

**D. DAMAGES**

As Counts I through VIII each state a viable cause of action against Medina, the Court must determine whether Reyes has shown damages. Reyes seeks to recover unpaid wages, liquidated damages, pre-judgment interest, and reasonable costs and attorney's fees.

1. Unpaid Wages and Overtime Compensation

The FLSA, NJWHL, and NYLL each permit an employee to recover unpaid compensation in a suit against an employer. 29 U.S.C. § 216(b) (FLSA); *Delgado v. Auto Gallery LLC*, Civ. No. 20-18593, 2021 WL 5864064, at *5 (D.N.J. Dec. 10, 2021) (NJWHL); *Kushelowitz v. Teva Pharmaceuticals, USA, Inc.*, 2023 WL 4248892, at *2 (D.N.J. June 29, 2023) (NYLL). Under each of these statutes, employees must be paid one and a half times their "regular rate" of pay for each hour worked in excess of 40 hours a week against an employer. 29 U.S.C. § 207(a)(1); NYLL § 650 et seq.; N.J.S.A. § 34:11-56a4, *et seq*. Thus, to state an overtime claim, a plaintiff must allege "forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (cleaned up) (addressing FLSA); *see also* N.J.S.A. 34:11-56a4(b)(1); NYLL § 650. "A plaintiff seeking unpaid wages may avail himself of a burden-shifting framework that accounts for an employer's

duty under federal and state law to maintain accurate wage and hour records." *Morales*, 2022 WL 1718050, at *5 (citing 29 U.S.C. § 211(c); N.J.S.A. § 34:11-56a20).

The plaintiff must show that he "in fact performed work for which [he was] improperly compensated" and that "the amount and extent of that work as a matter of just and reasonable inference." *United States ex rel. Int'l Bd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 350 (3d Cir. 2021) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). To satisfy this burden, the plaintiff may allege unpaid wages "through estimates based on [the employee's] own recollection." *Santiago v. Lucky Lodi Buffet Inc.*, Civ. No. 15-6147, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016).

Should the plaintiff make that initial showing, the burden shifts to the employer to show "the precise amount of work performed" or otherwise negate the inference arising from the employee's evidence. *Farfield Co.*, 5 F. 4th at 350 (citing *Anderson*, 328 U.S. at 687–88). "Where an employer has defaulted and the employees aver that they were never provided with information reflecting their exact weekly hours, affidavits approximating the employees' total hours can support a default judgment." *Morales*, 2022 WL 1718050, at *5 (citing *Santiago*, 2016 WL 6138248, at *3; *Anderson*, 328 U.S. at 688 (holding that if the employer fails to meet his burden, "the court may then award damages to the employee, even though the result be only approximate")).

For employees paid on a weekly basis, the Court must compute the "regular rate" by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). The Court must therefore make a threshold determination as to how many hours the weekly salary paid to Reyes was "intended to compensate."

Reyes urges the Court to apply forty hours because "[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). As a defendant in default, Medina has not presented any evidence to rebut that presumption. Therefore, the Court agrees that "the regular rate is calculated by dividing the salary by 40 hours a week." *Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, No. 16-8772, 2018 WL 1027446, at *4 n.3 (D.N.J. Feb. 23, 2018) (citing 29 C.F.R. § 778.109). Reyes' main contention is that Medina failed to pay him for overtime-qualifying hours that Reyes worked. *Wang v. Chapei LLC*, Civ. No. 15-2950, 2020 WL 468858, at *8 (D.N.J. Jan. 29, 2020) ("Lawful [overtime] pay is [ ] calculated by taking the greater of . . . Plaintiff's actual regular rate, or the proper pay based on a regular rate at the . . . minimum [wage].") (citation omitted); N.J.S.A. § 34:11-56a4(a).

Reyes sets forth detailed calculations of his regular rate and compensation owed in his brief in support of the Motion, arguing that based on these calculations he is owed $146,773.09 in unpaid wages, overtime and spread of hours. Specifically, Reyes contends that from:

- May 2021 through December 2021 (33 weeks), he worked 60.2 hours per week for a daily wage of $180 and thus a weekly wage of $1,170, amounting to $29.25 per hour for the first 40 hours, and was not paid for hours worked per week (20.2) in excess of 40 hours, which amounts to $19,498.05 in unpaid wages, and $9,749.03 in unpaid overtime wages;

- January 2022 though February 2023 (60 weeks), he worked 66.25 hours per week for a daily wage of $180 and thus a weekly wage of $1,170, amounting to $29.25 per hour for the first 40 hours, and was not paid for hours worked per week (26.25) in excess of 40 hours, which amounts to $46,068.75 in unpaid wages, and $23,034.38 in unpaid overtime wages;

- March 2023 through June 2023 (16 weeks), he worked 66.25 hours per week for a daily wage of $190 and thus a weekly wage of $1,235, amounting to $30.88 per hour for the first 40 hours, and was not paid for hours worked per week (26.25) in excess of 40 hours, which amounts to $12,969 in unpaid wages, and $6,484.80 in unpaid overtime wages;

- July 2023 through August 2023 (8 weeks), he worked 66.25 hours per week for a daily wage of $200 and thus a weekly wage of $1,300, amounting to $32.50 per hour for the first 40 hours, and was not paid for hours worked per week (26.25) in excess of 40 hours, which amounts to $6,825 in unpaid wages, and $3,412 in unpaid overtime wages; and

- September 2023 through October 2023 (8 weeks), he worked 82 hours per week for a daily wage of $200 and thus a weekly wage of $1,300, amounting to $32.50 per hour for the first 40 hours, and was not paid for hours worked per week (42) in excess of 40 hours, which amounts to $10,920 in unpaid wages, and $5,460 in unpaid overtime wages.

(*See* Moving Br. at 8–9.) Reyes therefore avers that Medina failed to pay him $96,281.40 in wages and $48,140.71 in overtime wages for hours Reyes worked, for a grand total of $144,422.11 in unpaid wages. (*Id.*) As a defaulting party, Medina fails to rebut or otherwise defeat Reyes' assertions.

The Court will therefore award Reyes judgment in the amount of $144,422.11 against Medina in unpaid wages and overtime compensation.

2. Spread of Hours and Record-Keeping Claims

Reyes contends that he is also entitled to judgment for unpaid "spread of hours" wages in an amount of $1,237.63, and damages for Medina's failure to maintain records of Reyes' employment. "Under New York Labor Law, whenever an employee works more [than] 10 hours in a day, he is entitled to receive an additional hour of pay for every day in which he worked more than 10 hours." *Pavia v. Around the Clock Grocery, Inc.*, Civ. No. 03-CV-6465 (ERK), 2005 WL 4655383, at 8 (E.D.N.Y. Nov. 15, 2005) (citing N.Y. Lab. Law §§ 650, *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4).

The Court has already found that Reyes stated a claim for wages owed pursuant to New York's spread of hours law, and that Reyes stated a claim that Medina violated NYLL § 195(1)(a)(iv) by failing to maintain records of Reyes' employment. The Court will therefore

award Reyes $1,237.63 for his spread of hours claim (Count VII) and $10,000 for his record-keeping claim.

3. Liquidated Damages

Reyes also argues that he is entitled to liquidated damages under the FLSA, NJWHL, or NYLL. The FLSA provides that an employer is typically liable for an additional sum equal to the unpaid wages as mandatory liquidated damages. *See* 29 U.S.C. § 216(b). "When an employer violates the overtime provisions of the [FLSA], Section 216(b) . . . provides for payment of both unpaid wages and an equivalent amount of liquidated damages." *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 134 (3d Cir. 1999) (citing 29 U.S.C. § 216(b)). A plaintiff may not recover liquidated damages for unpaid wages under both the FLSA and adjacent state laws — a plaintiff who is awarded liquidated damages under the FLSA is not entitled to duplicative liquidated damages under the NYLL or NJWHL. *Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (awarding plaintiff "liquidated damages under the FLSA or NYLL, as applicable, but not to be awarded cumulatively"); *Qu Wang v. Fu Leen Meng Rest. Liab. Co.*, Civ. No. 16-8772, 2018 WL 1027446, at *5 (D.N.J. Feb. 23, 2018) (It is well-settled that "a plaintiff who prevails on his FLSA claim cannot receive duplicative damages for his identical NJWHL claim, and that liquidated damages are not available under the NJWHL."). "Liquidated damages may only be reduced or denied where the employer proves that it acted in 'good faith' and with 'reasonable grounds to believe' that it was not violating the FLSA." *Morales*, 2022 WL 1718050, at *7 (quoting 29 U.S.C. § 260).

Here, Medina has defaulted and thus has offered no evidence of good faith to rebut the presumption in favor of liquidated damages. "Ignorance of FLSA requirements is insufficient to establish good faith and the employer must 'take active steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Tlacoapa v. Carregal*, 386 F.Supp.2d 362, 368 (S.D.N.Y.

2005) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). In *Tlacoapa,* the court found the fact that the employer paid the employee in cash and failed to compensate for overtime work demonstrated that the employer did not act in good faith when it failed to comply with the requirements of FLSA. *Id.* Similarly, this Court finds that Medina did not act in good faith when he failed to comply with the FLSA. Thus, the Court concludes that there is no basis on which to deny liquidated damages in this case.

However, Reyes has asked that the Court award liquidated damages in the amount of $366,932.73 "either under the FLSA in the amount of 100% under 29 U.S.C. § 216(b), or liquidated damages in the amount of 100% under the NYLL § 663(1) for half of work and 200% under New Jersey law for the other half of his work." (Moving Br. at 10.) The Court has already determined that the amount of unpaid wages, and uncompensated overtime amounts to $144,422.11. Reyes fails to offer a clear calculation for his proposition that the Court award liquidated damages in the amount of $366,932.73 based on the FLSA or a split between the NYLL and NJWHL. Because Reyes fails to specify or explain his preferred method of calculating liquidated damages, the Court will award judgment of liquidated damages for wage violations against Medina under the FLSA in the amount of $144,422.11 — the exact amount that Reyes claims he is owed for unpaid wages and overtime. Should Reyes dispute this award, the Court invites him to move to modify the accompanying order within 30 days from the date thereof.

4. Damages Under Wage Theft Prevention Act

Reyes contends that he is also entitled to damages pursuant to the Wage Theft Prevention Act ("WTPA"), N.J.S.A. 34:11-4.1, *et seq.*, NYLL § 195(1) & (3), and N.Y. Comp. Codes R. & Regs. Tit. 12 § 146-2.2. However, Reyes does not actually cite to the WTPA in the Complaint — Count VIII merely recites the relevant provisions of the NYLL. Reyes alleges that Medina failed

to furnish him with a notice containing information relating to his employment as well as proper wage statements in violation of the above statutes. (Compl. ¶¶ 123–24.) Reyes avers that he is entitled to recover $50 for each workday and $250 for each workweek that Medina failed to provide wage notices, each penalty accruing up to $5,000, reasonable attorney's fees, costs, and injunctive and declaratory relief, as provided by NYLL § 195(3) & 198(10b). (*Id.* ¶¶ 125–28.)

Thus, Reyes seeks an additional $10,000 in damages for Medina's wage notice violations. The Court agrees, having found that Reyes has sufficiently alleged that Medina failed to furnish such wage notices and information required by the NYLL, the Court will award judgment in the amount of $10,000 against Medina.

5. Pre-judgment Interest

Reyes also seeks pre-judgment interest on all unpaid wages owed by the Medina under the NYLL. The applicable interest rate is nine percent per annum. CPLR § 5004(a); *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents."). "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation." *Marfia v. T.C. Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998) (quoting *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 647 N.Y.S.2d 30, 32 (N.Y. App. Div. 1996)). Reyes is entitled to pre-judgment interest on his damages for unpaid wages under the NYLL, calculated from the date of his Motion, in the amount of $33,923.95.

6. Attorney's Fees and Costs

Finally, Reyes asks the Court to award him costs and reasonable attorney's fees, as permitted by the FLSA and NJWHL. *See* 29 U.S.C. § 216(b); N.J.S.A. § 34:11-56a25. The Court

determines the reasonableness of attorney's fees using the "lodestar approach," under which "the number of hours worked multiplied by the prevailing hourly rate" carries a "strong presumption" of "reasonableness." *See Souryavong v. Lackawanna County*, 872 F.3d 122, 128 (3d Cir. 2017).

In calculating the hours reasonably expended, the Court is tasked to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court should exclude hours that are not reasonably expended."). "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Public Interest Group*, 51 F.3d at 1188. As the Third Circuit explained:

> Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. The court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The prevailing party bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits, . . . that the requested hourly rates meet this standard. The starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive.

*Maldonado v. Houstoun*, 256 F.3d 181, 184–85 (3d Cir. 2001) (citations and quotations omitted).

The Court does not question the sufficiency of counsel's experience and expertise. Mr. Ames was admitted to practice law in New York in 2014 and has attested that he almost exclusively litigates wage-and-hour employment discrimination matters. (Declaration of Robert D. Salaman ("Salaman Decl.,") ECF No. 12-2, ¶ 17.) Mr. Ames' hourly rate is $500, which Reyes argues is a reasonable rate consistent with Third Circuit case law. Likewise, Reyes argues that Mr. Salaman's hourly rate of $500 is reasonable because he possesses similar experience and expertise in

employment litigation. (Moving Br. at 16); (Salaman Decl. ¶ 18.) However, Reyes cites to *Rizzo v. First Reliance Standard Life Ins. Co.*, 55 F.4th 111, 118, 128 (3d Cir. 2022) in his brief for the proposition that these rates are reasonable and consistent with other competent and experienced attorneys. (Moving Br. at 15–16.) The Court is unable to locate this precedent, but has located the following case *Rizzo v. First Reliance Standard Life Ins. Co.*, Civ. No. 17-745, 2023 WL 6923494, at *1 (D.N.J. Oct. 18, 2023) wherein the court, on remand from the Third Circuit, found counsel's rate of $500 per hour was reasonable. Given the information supplied to the Court — along with a review of previous cases — the Court finds that Reyes' counsel's requested rate of $500 is reasonable for comparable legal services provided in this area.

The Court next assesses the reasonableness of the time expended on this matter. The Court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary'" in order to determine whether the hours charged are reasonable. *Einhorn v. Dimedio Lime Co.*, Civ. No. 13-3634, 2015 WL 5920911, at *2 (D.N.J. Oct. 9, 2015) (internal citations omitted). "Counsel seeking attorney's fees 'must include fairly definite information as to hours devoted to activities[.]'" *Id.* (quoting *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001)). In reviewing the hours claimed, a court may only reduce an award "in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).

Mr. Salaman represents that Reyes' counsel — Mr. Salaman and Mr. Ames — spent 63.5 hours working on this case and Reyes' attorney's fees are currently $31,750. (Salaman Decl. ¶¶ 16, 19.) Mr. Salaman has submitted detailed records of the time expended and costs incurred by counsel in litigating this case. (*Id.* ¶¶ 21–22; Exs. D & E.) The records indicate that the fees

sought relate to the time spent on meeting with the client, document preparation, repeatedly engaging in settlement discussions with opposing counsel, document review, drafting the complaint, and preparing Reyes' motion for default judgment, (*id.* at Ex. D), with costs related to such work, (*id.* at Ex. E.) Courts in this District routinely find hourly rates high as $500 are reasonable in FLSA actions, depending on the experience of the attorneys. *See, e.g., Davis v. Erigere Rapidus Solutions ERS, Inc.*, Civ. No. 23-23279, 2024 WL 2795899, at *7 (D.N.J. May 31, 2024) (citing *Morales*, 2022 WL 1718050 at *8 (citing *Qu Wang*, 2018 WL 1027446 at *5). As a defaulting party, Medina fails to object to the hours asserted by Reyes' counsel or the related costs incurred.

Given counsel's experience and the record reflecting that most of counsel's time was spent on settlement discussion, speaking with the client, and preparing the complaint and motion for default judgment, the Court concludes that the hours, fees, and costs are reasonable in the particular circumstances of this case. *See id.* Accordingly, the Court will award Reyes $31,750 for attorney's fees and $1,338.85 for costs in connection with this litigation.

7. <u>Automatic Increase of Judgment</u>

Finally, Reyes argues that he is entitled to an automatic 15% increase in the judgment award in this case pursuant to NYLL §§ 198(4) and 663(4).

NYLL § 198(4) provides:

> In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorney's fees and costs incurred in enforcing any court judgment. Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

And NYLL § 663(4) provides:

> Attorneys' fees. In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorneys' fees and costs incurred in enforcing any court judgment. Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

The Court agrees that Reyes is entitled to an automatic increase in the total judgment awarded in the amount of 15% and will apply that increase to the total judgment award in the accompanying Order.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT IN PART and DENY IN PART** Reyes' Motion for Default Judgment. The Court will award judgment in favor of Reyes against Medina in the amount of $356,594.13 (the sum of damages for unpaid wages and overtime, spread-of-hours, record-keeping, and wage notice claims, plus liquidated damages, automatically increased by 15% pursuant to the NYLL), $33,088.95 in attorney's fees and costs, and prejudgment interest in the amount of $33,923.95. The Court will deny default judgment against ALJ without prejudice. An appropriate Order will follow. Within 30 days, Reyes shall either renew his Motion for Default Judgment as to ALJ or submit a proposed Order of Judgment as to Medina. Additionally, should Reyes dispute the amount awarded, Reyes shall move within 30 days to modify the judgment award and provide details supporting the judgment amount sought.

Date: **October 28, 2026**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**